UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

DAVID GRAND,

                    Plaintiff,                          15-CV-8779 (KMW)

-against-                                      **OPINION & ORDER**

LISA SCHWARZ,

                    Defendant.

-----------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

David Grand ("Plaintiff"), the trademark holder for the psychological counseling treatment called "Brainspotting," brings this action against Lisa Schwarz ("Defendant") for trademark infringement (Lanham Act, 15 U.S.C. §1117), false designation of origin and false description (Lanham Act, 15 U.S.C. §1125(a)), trademark dilution (Lanham Act, 15 U.S.C. §1125(c)), and unfair competition, deceptive trade practices, and false advertising under the applicable New York state statutes.  Plaintiff alleges that Defendant improperly used Plaintiff's trademark in the marketing and advertising of her own, unaffiliated training events.  Defendant now moves to dismiss the Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(2), (3) and (6).

For the reasons set forth below, Defendant's motion is DENIED in its entirety.

## I.    BACKGROUND

Plaintiff David Grand, a domiciliary of New York State with his principal place of business in Manhattan, New York, is a nationally and internationally recognized expert in the treatment of trauma.  (Compl. ¶¶ 1 & n.2, 5, 11 [Doc No. 1]).  He is the owner of a federally registered trademark for "Brainspotting," a type of "psychological counseling" used to treat

mental disorders like Post Traumatic Stress Disorder.  *Id.* ¶¶ 1-3 & n.1, 12, Ex. A; (Grand Decl. ¶¶ 4-5 [Doc. No. 28]).  "Brainspotting" is a term Plaintiff coined and has been using in association with his trainings and treatments since 2004.  (Compl. ¶ 12).  Plaintiff has treated thousands of clients, predominantly in New York, and has trained hundreds of others in the techniques associated with the Brainspotting trademark.  *Id.* ¶ 11.  Plaintiff alleges that therapists and clients have grown to recognize Brainspotting as a unique identifier of services provided by Plaintiff and those trained and certified by Plaintiff.  *Id.* ¶ 15.

Defendant Lisa Schwarz, a domiciliary of Pennsylvania, worked as a Brainspotting trainer from 2004 to 2014.  *Id.* ¶¶ 6, 25-26; (Grand Decl. ¶ 15).  During her time working with Plaintiff, Defendant conducted trainings around the world, including in New York.  *Id.* ¶ 8, Ex. B at 6; (Grand Decl. Ex. E. at D0008-9).  Plaintiff alleges that Defendant's trainings were performed under the Brainspotting trademark and under Plaintiff's ongoing supervision and control.  (Compl. ¶¶ 27-30).

In 2014, Plaintiff discovered that Defendant had modified the Brainspotting training materials and methods.  *Id.*  ¶ 31.  Plaintiff believed that these modifications were material and felt obligated to offer to retrain all those trained by Defendant under the incorrect methodology.  *Id.* ¶¶ 32-33.  On May 24, 2014, Defendant resigned and stated that she would remove all information about Brainspotting from her website "except for an explanation on my homepage of the transition."  *Id.* ¶¶ 35-39.  Plaintiff never agreed to any continued use of his trademark by Defendant.  *Id.* ¶ 38.

After terminating her business relationship with Plaintiff, Defendant advertised and promoted her own therapeutic training sessions, called Comprehensive Resource Model ("CRM").  *Id.* ¶ 40.  Defendant advertised CRM as being influenced by Brainspotting, and noted

that Brainspotting was one of the antecedents to, or pre-requisites for, CRM.  *Id.* ¶ 40 ("CRM has

a number of influences and antecedents. The most recent is Brainspotting . . . ."); *id.* ¶ 43

(Defendant claims that Brainspotting is a "pre-requisite" for Defendant's "Advanced CRM"

training).  In addition, Defendant offered a 50% discount on her trainings to New York

customers who completed a Brainspotting training.  (Grand Decl. Ex. E at D0013-14, D0018-

19).  Plaintiff alleges that Defendant's advertisements were false and infringing because they

confused consumers into believing that Brainspotting is associated or affiliated with Defendant's

CRM trainings.  (Compl. ¶¶ 1-2, 44-47).

## II.   LEGAL STANDARD

In reviewing a motion to dismiss, a court accepts as true all well-pleaded factual

allegations and draws all reasonable inferences in the plaintiff's favor.  *ATSI Commc'ns, Inc. v.*

*Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).  To survive a motion to dismiss, a plaintiff

must plead facts sufficient "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp*

*v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the supporting factual

allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   DISCUSSION

Defendant moves to dismiss the Complaint for lack of personal jurisdiction, improper

venue, and failure to state a claim.  The Court denies Defendant's motion because Plaintiff has

properly pleaded personal jurisdiction under CPLR § 302(a)(1), venue is proper in the Southern

District of New York, and Plaintiff has properly pleaded trademark infringement and trademark

dilution.

a. <u>Personal Jurisdiction</u>

Plaintiffs bears the burden of establishing the court's jurisdiction over defendants. *See Metro. Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566-67 (2d Cir. 1996). Prior to discovery, "plaintiff[ ] need only make a prima facie showing of personal jurisdiction over the defendant." *Porina v. Marward Shipping Co., Ltd.,* 521 F.3d 122, 126 (2d Cir. 2008). "Where a court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)) (alteration in original).

In evaluating whether plaintiffs have made a prima facie showing, courts "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Porina*, 521 F.3d at 126. "Because a motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction is 'inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'" *St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co.*, No. 96-CV-7269, 1997 WL 357989, at *1 (S.D.N.Y. June 26, 1997) (Mukasey, J.) (quoting *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995) (Wood, J.)) *aff'd sub nom. St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co.*, 152 F.3d 920 (2d Cir. 1998); *see also Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 465 (S.D.N.Y. 2008) (Chin, J.) ("[A] court may consider documents beyond the pleadings.").

To determine the existence of personal jurisdiction over a non-domiciliary, the court engages in a two-part analysis. First, the court determines whether there is jurisdiction over the

defendant under the relevant forum state's laws—in this case, N.Y. C.P.L.R. § 302(a).[1] *Bank Brussels Lambert*, 171 F.3d at 784. Second, the court determines whether an exercise of jurisdiction is consistent with the Due Process Clause. *Id.* (citing *Metro. Life Ins. Co.*, 84 F.3d at 567).

### i.   *Jurisdiction is proper under CPLR § 302(a)(1)*

Under C.P.L.R. § 302(a)(1), a court in New York may exercise personal jurisdiction over a non-domiciliary if (1) defendant "transacts any business within the state"; and (2) the "cause of action aris[es] from" that business transaction. N.Y. C.P.L.R. § 302(a)(1); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).

A nonresident "transacts business" in New York when she "purposefully avails [her]self of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (quoting *McKee Elec. Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382 (1967)). A cause of action arises from such a business transaction when there is "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998); *see also Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1988) (Section 302(a)(1) is a "'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.") (citing cases).

---

[1] Although Plaintiff also cites N.Y. C.P.L.R. § 301—New York's general jurisdiction statute—as a basis for personal jurisdiction in one of his footnotes, the Court finds that Defendant's alleged conduct does not rise to the level of "continuous and systematic" activity. *See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 50-51 (2d Cir. 1991) (quoting *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 434 N.E.2d 692, 694 (1982)).

Accepting Plaintiff's allegations as true, the Court concludes that jurisdiction is proper over Defendant pursuant to § 302(a)(1).  Defendant herself admits that she conducted a training session in Manhattan, New York on September 25-28, 2014.  (Decl. of Lisa S. Schwarz ¶ 23 [Doc. No. 16]).  This admission clearly satisfies the "transacts any business" prong of the New York long-arm statute.  Plaintiff's causes of action arise out of this purposeful business conduct in New York because Plaintiff alleges that Defendant marketed the New York training session using language that confused the source or origin of Defendant's CRM trainings.  (Grand Dec., Ex. E, D0013-14, D0018-19).  Plaintiff submits documentation showing that Defendant sent emails from an account named "Lisa Schwarz Brainspotting Seminars," offering customers a 50% discount on her CRM trainings if they completed a particular Brainspotting training and noting that "CRM has a number of influences and antecedents. The most recent is Resource Brainspotting . . . ."  *Id.*  Personal jurisdiction is proper under § 302(a)(1) because Plaintiff has made a prima facie showing that Defendant transacted business within New York and because the causes of action arise from that business transaction.

Defendant's interactive and commercial website provides further support for Plaintiff's allegations under § 302(a)(1).[2]  *See Hsin Ten Enter. USA, Inc. v. Clark Enterprises*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) (Scheindlin, J.) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").  Plaintiff alleges that Defendant maintains an interactive and commercial website through which customers can input their billing, shipping,

---

[2] Judge Sweet has described how different situations impact the exercise of jurisdiction: "At one end are cases where the defendant makes information available on what is essentially a "passive" web site. This use of the internet has been analogized to an advertisement in a nationally-available magazine or newspaper, and does not without more justify the exercise of jurisdiction over the defendant. At the other end of the spectrum are cases in which the defendant clearly does business over the internet, such as where it knowingly and repeatedly transmits computer files to customers in other states. Finally, occupying the middle ground are cases in which the defendant maintains an interactive web site which permits the exchange of information between users in another state and the defendant, which depending on the level and nature of the exchange may be a basis for jurisdiction."  *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (Sweet, J.) (citations omitted).

and contact information to register for Defendant's trainings.[3]  (Compl. ¶¶ 37-38, 42); (Grand

Decl. Ex. G); *see e.g.*, *New Angle Pet Products, Inc. v. MacWillie's Golf Products, Inc.*, No. 06-

CV-1171, 2007 WL 1871345, at *3 (E.D.N.Y. June 28, 2007) (personal jurisdiction proper

where defendant's website enabled viewers to purchase defendant's product online by providing

payment, shipping information, and contact information); *Alpha Int'l, Inc. v. T–Reproductions,

Inc.*, No. 02-CV-9586, 2003 WL 21511957, at *3 (S.D.N.Y. July 1, 2003) (Scheindlin, J.)

("Websites that permit information exchange between the defendant and viewers are deemed

'interactive,' and generally support a finding of personal jurisdiction over the defendant.");

*Sunlight Solutions, LLC v. Birnbaum*, No. 06-CV-683A, 2008 WL 724215, at *1-5 (W.D.N.Y.

Mar.17, 2008) (finding jurisdiction based on defendant's "highly interactive" website,

knowledge of New York plaintiff's website and trademarks, and express targeting of New York

residents for marketing).  Specifically, Plaintiff alleges that Defendant sold her CRM trainings to

New Yorkers over her website.  (Grand Decl. ¶ 32-35); (Pl. Opp'n to Def.'s Mot to Dismiss at 12

[Doc No. 27]) (citing Grand Decl. Ex. E at D0018-19, D0045-46).  Plaintiff also alleges that

Defendant sent flyers advertising her events to persons listed on the Brainspotting mailing list,

inviting potential customers to visit her website in order to register for trainings.  (Grand Decl. ¶

29, 32, 34, Ex. E at D0013-14, D0018-19).  Personal jurisdiction is proper under § 302(a)(1)

because, in addition to the fact that Defendant transacted business within New York, there is a

substantial relationship between Plaintiff's trademark infringement claims and Defendant's

interactive website.[4]

---

[3] Defendant's website can also be considered interactive because it provides potential customers with the
ability to contact Defendant.  *See, e.g.*, *Citigroup Inc.*, 97 F. Supp. 2d at 565.
[4] In the alternative, personal jurisdiction is also proper under § 302(a)(3) because Plaintiff has made a prima
facie showing that (1) Defendant committed a tortious act outside New York; (2) the act caused injury within New
York State; (3) Defendant expected or should reasonably have expected the act to have consequences in New York;
and (4) Defendant derived substantial revenue from interstate and New York commerce.  First, trademark
infringement is considered a tort for purposes of determining long-arm jurisdiction and Plaintiff has alleged that

### ii. *Jurisdiction is Consistent with the Due Process Clause*

The Due Process Clause requires that a non-domiciliary defendant have minimum contracts with the forum state, such that a finding of jurisdiction does not offend traditional notions of fair play and substantial justice. *Bank Brussels Lambert*, 305 F.3d at 127. Section 302(a) of the New York long-arm statute complies with the Due Process Clause because it limits jurisdiction to those causes of action that arise out of activity conducted within the state. *See United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir. 1966). Thus, "the constitutional requirements of personal jurisdiction are satisfied because application of § 302(a) meets due process requirements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).[5]

### b. Venue

Venue is proper in the Southern District of New York because in trademark infringement actions, venue is appropriate in every jurisdiction where an alleged infringement occurred. *See Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 182-83 (S.D.N.Y. 1995) (Wood, J.) (citing

---

Defendant used infringing language to sell her services to New York consumers. *See, e.g.*, *Energy Brands Inc. v. Spiritual Brands*, Inc., 571 F. Supp. 2d 458, 471 (S.D.N.Y. 2008) (Chin, J.) (citing *PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F. Supp. 2d 176, 180 (E.D.N.Y. 2004)). Second, Defendant's use of allegedly infringing language to sell her services to New York and other locations caused damage by confusing customers as to the origin of Defendant's services, satisfying the "injury within the state" prong of 302(a)(3). *See, e.g.*, *Savage Universal Corp. v. Grazier Const., Inc.*, No. 04-CV-1089, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004) (Lynch, J.) ("[T]he 'first effects' of trademark infringement or dilution are typically felt where the trademark owner resides and conducts business, and can include injury in the form of damage to goodwill, lost sales, or lost customers."). Third, it is reasonably foreseeable that Defendant's efforts to market her trainings in New York through flyers and her website would have consequences in New York State. *See, e.g.*, *Energy Brands Inc.*, 571 F. Supp. 2d at 471-72. Fourth, Defendant derived substantial revenue from her trainings around the world, including thousands of dollars for her September 2014 training in New York. (Grand Dec. ¶21, Ex. F at D0046); (Pl. Opp'n to Def.'s Mot to Dismiss at 15-17); *see, e.g.*, *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 242 (S.D.N.Y. 2010) (Baer, J.) ("No specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums.") (internal quotation marks omitted).

[5] Defendant does not dispute that a finding of jurisdiction is consistent with the Due Process Clause, nor could she. Defendant admitted to conducting eight training sessions in Manhattan, New York between 2008 and 2012. (Decl. of Lisa S. Schwarz ¶ 21 [Doc. No. 16]). Plaintiff identified eight additional New York training sessions from 2005 to 2008. (Grand Decl. ¶¶ 22, 24 [Doc. No. 28]). Defendant also conducted a training session in Manhattan, New York on September 25-28, 2014, and has scheduled additional training sessions in Brooklyn, New York and Rhinebeck, New York. *Id.* at Exs. E, H.

*Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294-95 (3d Cir. 1994)); *see also*

*Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (section 1391(b) permits a

plaintiff to sue in more than one venue).  Because Plaintiff has alleged that Defendant targeted

New York by distributing flyers, inviting potential customers to visit her website, and conducting

a training session in Manhattan, New York in September 2014, venue is proper in this district.

      c.  <u>Rule 12(b)(6)</u>

      Having established the Court's jurisdiction and that venue is proper here, the Court now

turns to Defendant's arguments under Rule 12(b)(6).

            *i.  Trademark Infringement*

      Defendant's nominative fair use argument is not appropriate on a motion to dismiss

because it necessitates fact-specific determinations. [6]  Defendant argues that Plaintiff does not

state a claim for trademark infringement because Defendant simply referred to Plaintiff's

trademark in a descriptive fashion, which is protected by the nominative fair use defense.  (Def.'s

Mot. to Dismiss at 10-13 [Doc. No. 17]).  The nominative fair use defense requires that use of a

trademark not create a likelihood of confusion as to the mark holder's affiliation, sponsorship, or

endorsement.[7] *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 414

(S.D.N.Y. 2006) (Chin, J.) (citing *George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1541

(2d Cir. 1992)).  Because the issue of consumer confusion requires examining "the minds of the

relevant purchasers"—an analysis based on factual inquiry—evaluating this issue on a motion to

---

[6] Defendant cites *Tiffany (NJ) Inc. v. eBay, Inc.* for support, a decision that is inapposite because it was rendered post-trial.  576 F. Supp. 2d 463 (S.D.N.Y. 2008) (Sullivan, J.) *aff'd in part, rev'd in part*, 600 F.3d 93 (2d Cir. 2010).

[7] The nominative fair use defense has three requirements: (1) "the product or service in question must be one not readily identifiable without use of the trademark;" (2) "only so much of the mark or marks may be used as is reasonably necessary to identify the product or service;" and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder."  *Id.* at 496 (quoting *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992)); *see also EMI Catalogue Pshp. v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 65 (2d Cir. 2000).

dismiss is inappropriate.  *Nasdaq Stock Mkt. v. Archipelago Holdings*, 336 F. Supp. 2d 294, 305 (S.D.N.Y. 2004) (Cote, J.).

The Court cannot determine on a motion to dismiss whether consumers were confused by Defendant's use of Plaintiff's Brainspotting trademark.  Indeed, Plaintiff may be able to prove his trademark infringement claims given that Defendant sent infringing flyers to the Brainspotting mailing list by a sender named "Lisa Schwarz Brainspotting Seminars."  (Grand Decl. Ex. E at D0013-14, D0018-19); *see, e.g.*, *Yurman Studio, Inc. v. Castaneda*, 591 F. Supp. 2d 471, 501 (S.D.N.Y. 2008) (Scheindlin, J.) ("The use of plaintiffs' brand names to describe defendants' own products, combined with the similarity of defendants' products to plaintiffs' designs, may suggest or imply plaintiffs' sponsorship, endorsement or the affiliation of defendants' products with those of plaintiffs.").  Plaintiff's allegations on the issue of consumer confusion are sufficient to defeat Defendant's Motion to Dismiss.[8]

### ii.   Trademark Dilution

Defendant argues that Plaintiff fails to plead trademark dilution because Plaintiff does not adequately allege that his Brainspotting trademark is famous.[9]  A mark is considered famous under the Federal Trademark Dilution Act "if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A).

---

[8] Defendant is also incorrect when she argues that Plaintiff failed to allege Defendant's commercial use of Plaintiff's trademark.  *See, e.g.*, (Compl. ¶¶ 1-2, 43-44, 46).  As described above, Plaintiff alleges that Defendant used infringing language to market her CRM trainings, specifically by suggesting that her trainings were affiliated or influenced by Brainspotting.  Thus, Plaintiff clearly alleges commercial use of the Brainspotting trademark.

[9] To prevail on his claims of trademark dilution, a plaintiff must establish that "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 118 (2d Cir. 2006) (quoting *Savin Corp. v. Savin Group*, 391 F.3d 439, 448-49 (2d Cir. 2004)).

At this early stage, Plaintiff has properly alleged that his Brainspotting mark is "famous." Plaintiff alleges that Brainspotting is a "famous trademark" coined in 2004 that is "well recognized by the relevant purchasing public." (Compl. ¶¶ 1, 3, 68-69). The treatments associated with the Brainspotting trademark have been used on thousands of clients. *Id.* ¶ 11. Plaintiff also alleges that the techniques associated with the Brainspotting trademark have been taught in training sessions throughout the United States and around the world. *Id.* ¶ 11. Indeed, Defendant herself seems to have conducted trainings throughout the United States and around the world. *See* (Grand Decl. Ex. E. at D0008-D0009). Plaintiff alleges that after his investment of significant time and money, therapists and clients have grown to recognize Brainspotting as a unique identifier of services provided by Plaintiff and those trained and certified by Plaintiff.[10] (Compl. ¶ 15). Although it is unclear whether Plaintiff will ultimately be able to prevail on his trademark dilution claim, Plaintiff has pleaded sufficient facts to defeat Defendant's Motion to Dismiss. *See, e.g.*, *GMA Accessories, Inc. v. Idea Nuova*, Inc., 157 F. Supp. 2d 234, 240-41 (S.D.N.Y. 2000) (Chin, J.).[11]

---

[10] Plaintiff also alleges that he sells Brainspotting DVDs and has written dozens of articles and three books on the Brainspotting techniques. (Compl. ¶¶ 17-19).

[11] Defendant also argues that Plaintiff failed to plead unfair competition under New York state law because Plaintiff failed to plead trademark infringement. The Court disagrees. In order to prevail on an unfair competition claim under New York state law, a plaintiff must couple evidence supporting liability under the Lanham Act with additional evidence demonstrating defendant's bad faith. *See, e.g.*, *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another. Central to this notion is some element of bad faith."). As noted herein, Plaintiff's allegations state a claim for trademark infringement. Further, Plaintiff has alleged bad faith because Defendant was warned that her conduct was considered trademark infringement. (Compl. ¶ 2); *see Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 389 (2d Cir. 2005) (citing *Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 587 (2d Cir. 1993)) ("Bad faith may be inferred from the junior user's actual or constructive knowledge of the senior user's mark."). Thus, Plaintiff has properly pleaded unfair competition under New York state law.

**IV.      CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss is DENIED in its entirety.

This Opinion resolves docket number 14.


SO ORDERED.

DATED:        New York, New York
              May 10, 2016


                                        _____/s/_____
                                        KIMBA M. WOOD
                                        United States District Judge