USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/23/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

DAVID GRAND,

        Plaintiff,

  -against-

LISA SCHWARZ,

        Defendant.

------------------------------------------------------X

15-CV-8779 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

In this action, Plaintiff David Grand, the trademark holder for a psychological treatment known as "Brainspotting," brought various claims against Defendant Lisa Schwarz. Although the case was closed in October 2016 pursuant to a court-ordered settlement agreement, the parties filed cross-motions for contempt in June 2017. (ECF Nos. 97, 104.) Those motions were referred to Judge Cott, who issued a Report and Recommendation (the "R&R") recommending, *inter alia*, that Schwarz's motion be granted, but that Schwarz not be awarded any damages. (ECF No. 125.) The Court largely adopted the R&R, but gave Schwarz a further opportunity to provide the Court with evidence of her damages. (ECF No. 132, at 15–16.) Following an evidentiary hearing held on May 21, 2018, and continued to July 19, 2018, Schwarz filed a Renewed Motion for Contempt Liability and Damages, which is presently before the Court. (ECF No. 155.)

For the reasons below, the Court DENIES Schwarz's motion insofar as it seeks damages other than attorneys' fees, because Schwarz has not met her burden of showing she was damaged by Grand's contemptuous conduct. The issue of attorneys' fees is not presently before the Court, and any motions for attorneys' fees shall be briefed pursuant to the schedule provided at

the end of this Opinion and Order.

I. **BACKGROUND**

　A. **Factual Background**

The Court assumes familiarity with the Court's March 27, 2018 Opinion and Order, which explains the factual and legal basis for why Grand is liable for contempt. (ECF No. 132.) As relevant here, Grand is the creator of a psychological modality known as "Brainspotting." Schwarz previously worked as a "trainer" for Grand, meaning that she trained therapists and others in Brainspotting techniques. (*See* Tr. 4:12–17, 182:2–20.) While working for Grand, Schwarz developed her own psychological modality, called "Comprehensive Resource Model," or "CRM." (Tr. 4:3–19.) Like Grand, Schwarz now has her own trainers and earns revenue from registration fees collected at CRM trainings taught by her and her trainers. (Tr. 12:20–13:25.)

Grand and Schwarz are parties to the "So Ordered Settlement Agreement and Mutual Release" that was entered by this Court on October 3, 2016 (the "Settlement Order"). The Settlement Order prohibits each party from disparaging the other party and from claiming that he or she prevailed in this litigation. (ECF No. 63 §§ 8–9.) Yet in the days and weeks after the Settlement Order was entered, Grand sent emails disparaging Schwarz to many of his Brainspotting trainers. (ECF No. 132, at 2–4.) The Court has already held that that Grand violated the Settlement Order by making these disparaging statements. (*Id.* at 9–13.)

Schwarz contends that Grand's disparaging statements caused damage to her business because they limited her ability to hold trainings in various locations and prevented her from

2

increasing the prices for those trainings. (Schwarz Mem.[1] 13–14, 19 n.29.) Grand contends that because his statements were not disseminated to anyone other than his trainers, Schwarz was not damaged by those statements. (Grand Opp'n[2] 6–7.)

### B. Procedural History

On November 6, 2015, Grand filed his Complaint, alleging, *inter alia*, that Schwarz had infringed his trademark in "Brainspotting." (ECF No. 1.) The parties subsequently settled, and on October 3, 2016, the Court so-ordered the settlement and closed the case. (ECF No. 64.)

On January 25, 2017, Schwarz sought to re-open the case to institute contempt proceedings. (ECF No. 67.) On April 6, 2017, the Court referred the contempt proceedings to Magistrate Judge Cott to handle general pretrial issues. (ECF No. 86.) On June 9, 2018, after the discovery period had ended, the parties filed cross-motions for contempt. (ECF Nos. 97, 104.) On October 18, 2017, the contempt motions were referred to Judge Cott. (ECF No. 116.) On February 2, 2018, Judge Cott issued the R&R, recommending that Grand's motion be denied and that Schwarz's motion be granted, but that Schwarz not be awarded any damages. (ECF No. 125.) On March 27, 2018, the Court entered an Opinion and Order largely adopting the R&R, but providing Schwarz with an opportunity to provide further evidence of her damages. (ECF No. 132, at 15–16.) Following evidentiary hearings on May 21, 2018, and July 19, 2018, Schwarz filed a Renewed Motion for Contempt Liability and Damages. (ECF No. 155.) On August 3, 2018, Grand filed an opposition to Schwarz's motion, and on August 10, 2018, Schwarz filed a reply. (ECF Nos. 158–160.)

---

[1] "Schwarz Mem." refers to Schwarz's Memorandum of Law in Support of Renewed Motion for Contempt Liability and Damages, dated July 27, 2018, ECF No. 157.

[2] "Grand Opp'n" refers to Grand's Memorandum of Law in Opposition to Defendant's Renewed Motion for "Contempt Liability and Damages," dated August 3, 2018, ECF No. 159.

## II. LEGAL STANDARD

In a civil contempt proceeding, a court may impose monetary sanctions "to compensate the plaintiff for any harms caused by the contempt." *Milburn v. Coughlin*, 83 F. App'x 378, 380 (2d Cir. 2003). An award of compensatory damages "must be based on a showing of actual injury." *Id.*; *accord New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1353 (2d Cir. 1989) ("Compensatory sanctions should reimburse the injured party for its actual damages."). To prove these damages, the moving party must demonstrate a "causal connection" between the contemnor's contemptuous behavior and the alleged damages. *Leadsinger, Inc. v. Cole*, No. 05-CV-5606 (HBP), 2006 WL 2266312, at *17 (S.D.N.Y. Aug. 4, 2006) (Pitman, M.J.) (collecting cases); *Lavatec Laundry Tech. GmbH v. Voss Laundry Sols.*, No. 3:13-CV-00056 (SRU), 2018 WL 2426655, at *13 (D. Conn. Jan. 9, 2018) (declining to award compensatory damages, because the party moving for contempt was unable "to isolate the portion of [contemnor's] profits that were derived from its contempt"); *In re Vill. Manor Health Care, Inc.*, No. 07-20151 (JAM), 2016 WL 758687, at *5 (Bankr. D. Conn. Feb. 25, 2016) ("A necessary component of establishing actual harm is a showing of causation linking the asserted harm to the civil contempt.").

"The party seeking compensation carries the burden of proof as to [its alleged] damages." *Cordius Tr. v. Kummerfeld Assocs., Inc.*, 658 F. Supp. 2d 512, 524 (S.D.N.Y. 2009) (Ellis, M.J.); *Leser v. U.S. Bank Nat'l Ass'n*, No. 09-CV-2362 (KAM) (MDG), 2012 WL 580489, at *2 (E.D.N.Y. Feb. 21, 2012) ("The party seeking damages has the burden of proof as to the amount of those damages.").

## III. DISCUSSION

Schwarz claims damages on the theories that Grand's disparagement (1) resulted in lost profits to her business, (2) caused her reputational and emotional harm, and (3) deprived her of

4

the benefits of the Settlement Order. As discussed fully below, Schwarz is not owed damages under any of these theories.

### A. Lost Profits

Schwarz contends that due to Grand's disparaging statements, she was unable to host CRM training sessions in various places and was unable to increase her prices, resulting in lost profits to her business. (Schwarz Mem. at 11–14, 19 n.29.) Schwarz has not met her burden of proving that Grand's contemptuous conduct caused her lost profits in either of these ways.

#### 1. Number of Trainings

Schwarz contends that following Grand's disparagement, she was unable to host trainings in various places. (*See id*. at 11–14.) Schwarz testified, for example, that when she contacted colleagues in Germany and Washington, D.C., she received a "lukewarm response" from them, and she was ultimately unable to host trainings in those places. (Tr. 27:30–28:16.) Schwarz admits, however, that none of the colleagues she contacted told her directly that they were aware of Grand's disparaging statements or did not want to work with Schwarz because of those statements. (*See* Tr. 41:17–22, 45:24–46:2.) Instead, Schwarz's only evidence that the statements were disseminated to anyone other than Grand's Brainspotting trainers consists of four out-of-court conversations that Schwarz states she had with her colleagues. As discussed below, all four of these statements are inadmissible hearsay, because Schwarz offers them to prove the matters asserted in those statements.[3] *See* Fed. R. Evid. 801(c), 802.

*First*, Schwarz testified that one of her colleagues told her that one of Grand's Brainspotting therapists told the colleague that "the Brainspotters" were "saying really bad things

---

[3] The Court analyzes each statement individually, and in detail, only because Schwarz contends that she is *not* offering these statements for the truth of the matters asserted therein. (*See* Schwarz Reply at 3–4.)

about" Schwarz. (Tr. 24:14–25:7). This testimony contains an out-of-court statement by one of Schwarz's colleagues that, itself, contains an out-of-court statement by a Brainspotting therapist. The purpose of admitting the Brainspotting therapist's statement is to prove that Grand's Brainspotting trainers were "saying really bad things about Schwarz," permitting the inference that those trainers were widely disseminating Grand's disparaging remarks. Thus, because the Brainspotting therapist's statement is an out-of-court statement being used to prove the truth of the matter asserted—namely, to prove that Grand's trainers had been "saying really bad things" about Schwarz—the therapist's statement is inadmissible hearsay. *See* Fed. R. Evid. 801(c).

*Second*, Schwarz testified that one of her colleagues told her that when this colleague was getting a massage at a trauma clinic in California, the massage therapist giving her the massage asked her, "[D]id you hear that Lisa Schwarz lost her case and had to pay David Grand $50,000 and was found guilty of trademark infringement?" (Tr. 25:8–13.) This testimony contains an out-of-court statement by Schwarz's colleague. The purpose of introducing this out-of-court statement is to prove that the massage therapist stated, "did you hear that Schwarz lost her case?", permitting the inference that Grand's statements were widely disseminated around the country. Thus, because the colleague's statement is an out-of-court statement being used to prove the truth of the matter asserted—namely, that a massage therapist asked Schwarz's colleague, "did you hear that Schwarz lost her case?"—the colleague's statement is inadmissible hearsay. *See* Fed. R. Evid. 801(c).

*Third*, Schwarz testified that one of Schwarz's trainers told her that one of Grand's trainers had asked this trainer whether she had heard that Schwarz "had been found guilty" and "had lost [her] case." (Tr. 25:14–17.) Schwarz's testimony contains an out-of-court statement by Schwarz's trainer. The purpose of introducing this out-of-court statement is to prove that

6

Grand's trainer told Schwarz's trainer that Schwarz "had lost [her] case," permitting the inference that Grand directed that trainer (or his trainers generally) to disseminate disparaging remarks about Schwarz. Thus, because Schwarz's trainer's statement is an out-of-court statement being used to prove the truth of the matter asserted—namely, that Grand's trainer told Schwarz's trainer that Schwarz "had lost [her] case"—Schwarz's trainer's statement is inadmissible hearsay. *See* Fed R. Evid. 801(c).

*Fourth*, Schwarz testified that one of her colleagues told her that when this colleague was "in Scottish Parliament doing a presentation," a member of Parliament stated, "I've heard all about that lawsuit and about that woman [Schwarz], I want nothing to do with that model or with her." (Tr. 25:18–24.) Schwarz's testimony contains an out-of-court statement by Schwarz's colleague. The purpose of introducing this out-of-court statement is to prove that a member of Scottish Parliament stated that he "heard all about that lawsuit and about" Schwarz, permitting the inference that Grand's disparaging statements were disseminated widely around the world. Thus, because Schwarz's trainer's statement is an out-of-court statement being used to prove the truth of the matter asserted—namely, that a person in Scottish Parliament stated that he had "heard all about lawsuit and about" Schwarz—Schwarz's trainer's statement is inadmissible hearsay. *See* Fed. R. Evid. 801(c).

Schwarz contends that these statements are admissible under Federal Rule of Evidence 803(21), (Schwarz Reply[4] 4–5), the hearsay exception for statements about "[a] reputation among a person's associates or in the community concerning the person's character." The Advisory Committee Note to this rule states that the rule applies only to statements of reputation

---

[4] "Schwarz Reply" refers to Schwarz's Reply Memorandum of Law in Support of Renewed Motion for Contempt Liability and Damages, dated August 10, 2018, ECF No. 160.

that are introduced "as a means of proving human character." Fed. R. Evid. 803(21) advisory committee's note to paragraphs (19), (20) and (21). Here, Schwarz does not introduce these statements to prove her character, but instead to prove specific instances where others spoke disparagingly of her. The rule is therefore inapplicable in this context.

Because Schwarz's only evidence that Grand's statements were disseminated beyond his trainers is hearsay, Schwarz cannot show the necessary causal link between Grand's contemptuous statements and Schwarz's inability to host trainings in certain areas. For this reason, the Court cannot award damages based on Schwarz's purported inability to host trainings. *See Leadsinger, Inc. v. Cole*, 2006 WL 2266312, at *17.

2. Price of Training

Schwarz contends that she had been planning to increase the price of her trainings in 2017, and she would have done so if Grand had not disparaged her. (Tr. 28:17–29:2.) The Court does not credit Schwarz's testimony that before learning of Grand's disparagement, she had intended to raise her prices. Schwarz did not explain when she decided to increase her prices, or why she believed that it would have been a good business decision to increase those prices. (*See id.*) She also offered no evidence corroborating her claim that she intended to increase her prices, such as documents reflecting such an intention or testimony by her business manager about discussions they had prior to learning of Grand's disparagement.

The Court also does not credit Schwarz's testimony that after hearing of Grand's disparagement, Schwarz decided not to raise her prices because she "was worried" that the disparaging remarks "would create a situation where [she] wouldn't be able to get enough people to keep [her] business viable." (Tr. 28:17–29:2.) This testimony is undermined by Schwarz's other testimony concerning disparaging statements Grand made *before* the Settlement Order was entered. In particular, Schwarz testified that in 2015, Grand "started maliciously disparaging

8

[her] around the world through bulk e-mail programs." (Tr. 48:24–49:8.) During that period of time, Schwarz testified that Grand sent emails to "a large e-mail list in Australia" and "to the southeast of the United States through the Atlanta thread," stating that he did not support CRM. (Tr. 36:24–37:9.) Although this disparagement was sent to a large number of people—and was thus presumably more damaging than the disparagement at issue in this contempt proceeding— Schwarz testified that she "can't really say" whether Grand's disparagement from 2015 had affected her business. (Tr. 48:24–49:8.) The Court finds it implausible that Schwarz believed that Grand's 2016 disparagement was so serious that she needed to refrain from increasing her prices, yet was unsure of the effect of prior, more serious disparagement from 2015. For this reason, as well, Schwarz has not shown that Grand's disparaging statements caused her to refrain from increasing her prices.

* * *

Because Schwarz has not offered sufficient evidence "establishing a causal connection" between Grand's contemptuous statements and her purported lost profits, an award of compensatory damages is not warranted. *See Leadsinger, Inc.*, 2006 WL 2266312, at *17.

### B. Reputational and Emotional Damages

In the alternative, Schwarz requests that the Court compensate her for alleged reputational and emotional harm caused by Dr. Grand's contemptuous conduct. (*See* Schwarz Reply 10.) With respect to reputational harm, as discussed above, Schwarz has not provided any admissible evidence showing that Grand's statements were disseminated beyond his Brainspotting trainers, and thus that there was any quantifiable harm to Schwarz's reputation. Schwarz similarly has not met her burden of proving emotional harm, because she did not provide testimony or argument concerning those alleged damages.

### C. Deprivation of Value of Settlement Order

Schwarz contends that because Schwarz paid $50,000 to settle the infringement claim, and because Grand deprived her of the benefit of the "No Disparagement" and "No Admission of Liability" clauses in the Settlement Order, Grand should return the $50,000 Schwarz paid for those benefits. (Schwarz Mem. 24.) Schwarz has not, however, provided any legal authority for this position, or any reason for distinguishing the Second Circuit authority requiring compensatory damages to "be based on a showing of actual injury." *Milburn*, 83 F. App'x at 380. For this reason, the Court cannot order Grand to return the $50,000 payment made under the Settlement Order. It is worth noting, as well, that Schwarz has not been fully deprived of the benefits of the Settlement Order. First, the Settlement Order releases Grand's claims of trademark infringement, saving Schwarz the costs of defending those claims and eliminating any risk of Grand obtaining a judgment against her on those claims. (*See* ECF No. 63 §§ 4a, 5a.) Second, Grand testified credibly that he regretted violating the Settlement Order, and that he would not do so again: "I have deep regrets over those actions. It has been a painful and humbling learning experience for me, and I will—I have not and will not do any behaviors like that forever more." (Tr. 198:17–199:6.) In light of the extensive nature of these contempt proceedings, and Grand's testimony, the Court expects that Grand will not further violate the Settlement Order.

## IV. CONCLUSION

In conclusion, for the reasons discussed above, the Court DENIES Schwarz's motion insofar as it seeks damages other than attorneys' fees, because Schwarz has not met her burden of showing she was damaged by Grand's contemptuous conduct.

The issue of attorneys' fees is not presently before the Court, and any motions for attorneys' fees shall by briefed pursuant to the following schedule:

- On or before August 31, 2018, the parties are directed to meet-and-confer, in an attempt to come to an agreement with respect to the awarding of attorneys' fees;

- On or before September 14, 2018, the parties shall file any motion for attorneys' fees;

- On or before September 21, 2018, the parties shall file any oppositions to the other party's motion for attorneys' fees; and

- On or before September 28, 2018, the parties shall file any reply in support of their respective motions for attorneys' fees.

This Opinion and Order resolves docket number 155.

SO ORDERED.

Dated: New York, New York
August 23, 2018

*Kimba M. Wood*
KIMBA M. WOOD
United States District Judge